UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 05-440 |
| HAKIEM JOHNSON : | |

**SURRICK, J.**                                                                  **OCTOBER 5, 2007**

**MEMORANDUM & ORDER**

Presently before the Court is the Motion of Defendant, Hakiem Johnson, to Suppress Physical Evidence Seized as a Result of the Illegal Arrest of Defendant on January 21, 2003, in Philadelphia, Pennsylvania (Doc. No. 302). A Suppression Hearing was held on August 13, 2007. For the following reasons, Defendant's Motion will be denied.

**I.      FINDINGS OF FACT**

On January 21, 2003, Philadelphia Police Officer Thomas Liciardello of the Narcotics Field Unit of the Philadelphia Police Department received a tip from a confidential source that between 2 p.m. and 4:30 p.m. nine ounces of cocaine were to be delivered to Tameka's Bar on 2502 S. 58th Street by two black men, Taz and Ace, who would be driving a maroon, four-door vehicle. (Suppression Hr'g Tr. 78–79, August 13, 2007.) The confidential source who provided the tip had on several previous occasions provided the police with reliable and accurate information regarding the delivery of narcotics, resulting in large confiscations of narcotics. (*Id*. at 79–80.)

Officer Liciardello, who has been in the narcotics field unit for seven years, and with the

police department for thirteen years, knew the area around Tameka's Bar to be a high crime area. (*Id*.)  The neighborhood between Lindbergh Boulevard and Elmwood Avenue experiences significant crime and many narcotics sales.  (*Id*. at 79.)  At the time of this incident, Officer Liciardello had been in the narcotics field unit for about three years and had either been involved in or observed over one-thousand narcotics transactions.  (*Id*. at 82.)  Officer Liciardello had also spoken with numerous individuals arrested for dealing drugs and had learned from them about their operations and methods for delivery and receipt of drugs.  (*Id*.)

On the afternoon of January 21st Officer Liciardello set up a surveillance of Tameka's Bar.  At approximately 4:10 p.m., a four-door maroon car arrived in front of Tameka's Bar.  (*Id*. at 80.)  Defendant Hakiem Johnson was operating the vehicle and co-Defendant Terry Walker was in the front passenger seat.  (*Id*. at 80, 91.)  Walker stepped out of the passenger side of the vehicle, walked over to the bar, looked into the bar, looked around the area, and looked up an alley that runs alongside the bar.  (*Id*. at 80.)  Walker then walked over to the driver's side of the vehicle, pulled a white bag from his inside jacket pocket, and handed it to Defendant Johnson, who was seated in the driver's seat.  (*Id*.)  Walker then entered Tameka's Bar.  (*Id*. at 83.)  The bag was rolled up and was large enough to contain the cocaine that the confidential source had indicated would be delivered.  (*Id*.)  Based upon his experience, Officer Liciardello believed that Walker intended to hand drugs to an individual, but that the person had not yet arrived.  (*Id*. at 82–83.)  Officer Liciardello further believed that Walker gave the drugs to Defendant Johnson so that Walker would not be waiting on the street or in the bar with the narcotics.  (*Id*. at 83.)

After being handed the white package, Defendant Johnson drove southbound on 58th Street towards Lindbergh Boulevard.  (*Id*.)  Officer Liciardello relayed the information regarding

the incident to backup officers, providing the tag number, the vehicle information and color, and reporting that the man driving had a white bag on him. (*Id*.) Officer Liciardello instructed the backup officers to follow the vehicle out of the area. (*Id*. at 84.)

Police Officer Gary Francis, of the Philadelphia Police Department's Narcotics Field Unit, was participating in Officer Liciardello's investigation as backup. (*Id*. at 113–114.) Officer Francis knew that Officer Liciardello was investigating narcotics transactions. (*Id*. at 116.) Along with other backup officers, Officer Francis waited in the area of 58th Street and Lindbergh Boulevard. (*Id*. at 114.) After receiving Liciardello's flash information, Francis followed the vehicle to the 2600 block of S. 62nd Street, where it parked on the east side of the street facing north. (*Id*.) Defendant Johnson stepped out of the vehicle. (*Id*. at 117.) Francis continued to receive information from Liciardello about the surveillance. (*Id*.)

Officer Francis then approached Defendant Johnson and identified himself as a police officer. (*Id.* at 115.) At that point, Defendant was standing outside of the vehicle, on the driver's side. (*Id*.) Officer Francis observed that Defendant Johnson was wearing a "hoodie" sweatshirt and that the pouch in the front was weighted down and hanging below his waistband. (*Id*. at 115, 117.) Because of the way the pouch was hanging, Francis thought that Defendant might be carrying a weapon. (*Id*. at 117.) Francis knew from his approximately twelve years of experience as a police officer (*id.* at 113) that drugs and guns commonly go together (*id.* at 118). Francis also knew that he was investigating Defendant for involvement in a drug transaction. (*Id*.) Officer Francis conducted a pat-down by touching the weighted down pocket of Defendant's sweatshirt. (*Id*. at 115.) Based on his experience as a police officer in the narcotics field unit, the Francis realized immediately that Defendant was carrying contraband, specifically

3

cocaine in rock form.  (*Id*. at 115, 118, 127.)  From the weighted down pocket of Defendant's sweatshirt Officer Francis seized a white bag containing two clear plastic bags, each containing approximately one-hundred and twenty-five (125) grams of cocaine.  (*Id*. at 118.)  A house key was also recovered.  (*Id*. at 127.)  After receiving information that narcotics had been recovered from Defendant Johnson, Officer Liciardello and fellow officers entered Tameka's bar and arrested Walker.  (*Id.* at 84.)  The house key found on Defendant Johnson was the key to the door at 2642 S. 62nd Street.  (Doc. No. 302 ¶ 13.)  Police officers secured this residence until a search and seizure warrant was obtained.  (*Id*. ¶ 14.)  Upon execution of the search warrant various items of drug paraphernalia and approximately thirty-four (34) grams of cocaine were seized.  (*Id*. ¶ 15.)

## II.   CONCLUSIONS OF LAW

Defendant Johnson challenges as violations of his Fourth Amendment rights (1) the stop and arrest on January 21, 2003 (Doc. No. 302 at unnumbered 1) and (2) the search of his Motorola phone and the residence at 2642 S. 62nd Street (*id.* at unnumbered 3).  Defendant moves to suppress the various items of contraband found on his person and inside of his home as the fruits of an illegal search and seizure.

### A.   Stop, Frisk and Arrest of the Defendant on January 21, 2003

Defendant Johnson contends that the police did not have reasonable suspicion to detain and frisk him after he parked his car on the 2600 block of S. 62nd Street.  (Doc. No. 302 at unnumbered 3.)  Defendant argues that the police had no articulable facts to support a reasonable suspicion that he was involved in criminal activity at the time that he was stopped.  (*Id*. at unnumbered 2.)  Defendant further argues that the behavior observed by Officer Liciardello

outside of Tameka's bar was "entirely inconsistent with the manner by which the 'source' told the officers that cocaine would be delivered." (Doc. No. 302 ¶ 10.)

We conclude that Officer Francis had reasonable suspicion based upon articulable facts to make an investigatory stop of Defendant after Defendant stepped out of his car in the 2600 block of S. 62nd Street. Investigative stops are justified under the Fourth Amendment if they are made based on a police officer's "reasonable suspicion that 'criminal activity may be afoot.'" *See United States v. Roberson*, 90 F.3d 75, 77 (3d Cir. 1996) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 30 (1968) (holding that an investigative stop may be justified by less than the probable cause for an arrest)). Reasonable suspicion must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. "[T]he fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (internal citations omitted).

Officer Francis was assisting in a drug investigation being supervised by Officer Liciardello. Officer Liciardello had received a tip from a source with whom he had worked before and who had an excellent record in terms of the basic accuracy of his tips. In this instance, consistent with the source's tip, a maroon four-door car arrived at Tameka's bar at 4:10 p.m., within the time period provided by the source. The fact that the car was occupied by Hakiem Johnson and Terry Walker ("Taz"), and not Alton Coles ("Ace"), is of no moment. Defendant Johnson is Coles' uncle and has been identified as one of Coles' couriers.

Officer Liciardello believed, based on his training and experience, that Walker's behavior in stepping out of the car and peering around the area indicated that he was looking for the buyer

in the drug transaction. Officer Liciardello observed Walker pull a rolled-up bag out of his jacket and hand it to Defendant Johnson. Officer Liciardello noted that the bag was large enough to contain the nine ounces of cocaine that the confidential source had reported. Defendant Johnson then drove away from Tameka's while Walker entered the bar.

Officer Liciardello continued his surveillance of Walker and reported his observations and instructions to his backup team. As a part of Officer Liciardello's surveillance team, Officer Francis was informed about the purpose of the investigation and the details of Officer Liciardello's observations. Based upon the tip from the confidential source and Officer Liciardello's observations during the surveillance, Officer Francis certainly had reasonable suspicion to approach Defendant Johnson for further investigation. Defendant had parked his car on the 2600 block of S. 62nd Street and exited the vehicle. At that point the officers walked up to Defendant and Officer Francis identified himself as a police officer. Certainly, Defendant's constitutional rights were not violated by this action of Officer Francis.

A police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual . . . ." *Terry v. Ohio*, 392 U.S. 1, 27. "A pat-down for weapons can occur only where the police officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *United States v. Kithcart*, 218 F.3d 213 (3d Cir. 2000) (quoting *Terry,* 392 U.S. at 21). However, a *Terry* protective frisk may be justified when the individual is suspected of drug activity: "Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being

6

involved in a drug transaction." *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005); *see also United States v. Childs*, 131 Fed. App'x 347, 349 n.2 (3d Cir. 2005).

Officer Francis knew that he was engaged in a drug investigation. Officer Francis also knew from his years of experience that drugs and guns are frequently linked. It was reasonable for Officer Francis to suspect that the heavy bulge in the Defendant's sweatshirt may be a weapon. Officer Francis did not exceed the scope of *Terry* when he touched Defendant's sweatshirt pouch to determine whether Defendant was carrying a gun or contraband. Based upon his extensive experience in narcotics investigations, Officer Francis knew that what he had touched was rock cocaine.

Finally, reasonable suspicion ripened into probable cause to arrest Defendant. A warrantless public arrest does not violate the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). To determine whether an officer had probable cause to arrest an individual, a court must "examine the events leading up to the arrest, and then 'decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). This determination is made based on the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983).

Having found approximately 250 grams of rock cocaine on Defendant's person, Officer Francis had clear probable cause to arrest Defendant and conduct a search incident to a lawful arrest. Upon making a lawful arrest, officers may conduct a search of the area within the immediate control of the arrestee. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969)

("When an arrest is made . . . it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."). "The rationale underlying such a search is the officer's safety.  Specifically, a search of the person incident to arrest allows the officer to remove any weapons and to preserve any evidence or fruits of crime that the person may have." *Torrence v. Sobina,* Civ. No. 06-3526, 2006 WL 2559480, at *1 (E.D. Pa. Aug. 31, 2006) (citing *United States v. Robinson,* 414 U.S. 218, 224-26 (1973)).  Under the circumstances we reject Defendant's argument that the evidence seized from Defendant should be suppressed because the officers lacked probable cause.

      B.      **Search of the Motorola Phone and 2642 S. 62nd Street**

The Defendant next argues that "[b]ecause the search of Defendant's telephone and residence were the direct result of an illegal detention and search in violation of Defendant's Fourth Amendment rights, all evidence seized therefrom must be suppressed." (Doc. No. 302 at unnumbered 3.)[1]

Since the frisk of Defendant, and subsequent search of his person incident to a lawful arrest, were permissible, Defendant's "fruit of the poisonous tree" argument is without merit.

When reviewing whether a search warrant was based on probable cause, we adopt a deferential standard.  *United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005).  The Supreme Court has made it clear that in assessing whether probable cause exists to support the issuance of a search warrant, the magistrate must do a "totality-of-the-circumstances analysis" and must

---

[1] The Government stated at the suppression hearing that it "does not intend to use at trial any of the evidence, including drugs and drug paraphernalia, recovered from the house" (Doc. No. 474 at 22 n.12).  Accordingly, we need not consider Defendant's probable cause arguments in relation to the search warrant for his residence at 2642 S. 62nd Street.

make a "practical, common-sense decision." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). That decision should be based on "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The District Court, in reviewing the magistrate's decision, must "simply . . . ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones*, 362 U.S. at 271); *see also United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997). A "substantial basis" is said to exist where, "given all the circumstances set forth in the affidavit before [the issuing judge] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

      On April 19, 2005, the Honorable Thomas J. Rueter, United States Magistrate Judge of the Eastern District of Pennsylvania, issued a search warrant for the Motorola phone seized from the Defendant at the January 21, 2003 stop. (*See* Doc. No. 474, Gov't Ex.) (hereinafter, "Motorola Search Warrant Affidavit.") The affiant, Special Agent John F. Bowman of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), described the investigation into the Alton Coles drug conspiracy and identified Defendant Johnson as a distributor of cocaine and crack cocaine. (Motorola Search Warrant Aff. ¶ 3.) The affiant stated that he had learned from confidential sources, police seizures, and analysis of cellular telephones of Defendant's involvement in the long-running conspiracy. (*Id.* ¶ 6.) The affiant indicated that on January 21, 2003 when the Motorola phone was seized from Defendant, also seized was 400 grams of cocaine, which resulted in a guilty plea by Defendant in the Philadelphia Court of Common Pleas. (*Id.* ¶ 5.) The affiant further attested: "From my training and experience, I have

determined that narcotics traffickers frequently list drug associates on cellular phone directories, often by nickname, to avoid detection by others." (*Id*. ¶ 7.)

Magistrate Judge Rueter had a substantial basis for concluding that probable cause existed to search the Defendant's cellular phone. The Defendant was tied to a drug organization which investigators knew used cellular phones to communicate. The investigators had previously used the analysis of cellular phones to link Defendant Johnson and others to the Coles conspiracy. The Magistrate Judge could reasonably conclude, based on the affidavit as well as common sense, that the Defendant's telephone would contain contact numbers and information in furtherance of the drug conspiracy and useful to the investigation. Accordingly, we conclude that the search warrant issued by Magistrate Judge Reuter and the search of the Defendant's Motorola phone did not violate Defendant's constitutional rights. Defendant's Motions to Suppress will be denied.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| HAKIEM JOHNSON | : | |

### ORDER

AND NOW, this 5th day of October, 2007, upon consideration of the Motion of Defendant, Hakiem Johnson, to Suppress Physical Evidence Seized as a Result of the Illegal Arrest of Defendant on January 21, 2003, in Philadelphia, Pennsylvania (Doc. No. 302), and all documents submitted in support thereof and in opposition thereto, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

/s/ *R. Barclay Surrick*
U.S. District Court Judge