UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :          CRIMINAL ACTION
            v.                    :
                                  :          NO. 05-440
HAKIEM JOHNSON                     :

SURRICK, J.                                          JANUARY 4, 2008

                        **MEMORANDUM & ORDER**

        Presently before the Court is Defendant Hakiem Johnson's Motion to Suppress the

Physical Evidence Seized at 7130 Upland Street on August 10, 2005 (Doc. No. 300), and the

Motion of Defendant, Hakiem Johnson, to Suppress the Search of a Blue Ford Thunderbird

(Doc. No. 301).[1]  A Suppression Hearing was held on August 13 and 16, 2007.  For the

following reasons, Defendant's Motions will be denied.

**I.      BACKGROUND**

        On February 21, 2007, the grand jury returned a 194-Count Fifth Superseding Indictment

("Indictment") charging Defendant Hakiem Johnson and twenty-one co-defendants with offenses

related to their participation in a wide-ranging drug conspiracy.  The Indictment charged the

defendants with a number of crimes including conspiracy to distribute narcotics in violation of

21 U.S.C. § 846; engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a),

(b); being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); possession of a

firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); distribution

_____

        [1] Defendant also filed a Motion of Defendant, Hakiem Johnson[,] for a Frank's [sic]
Hearing (Doc. No. 300).  At the August 13, 2007 Suppression Hearing, defense counsel advised
that a *Franks* hearing was not necessary.  (Suppression Hr'g Tr. 143, August 13, 2007.)

and possession with intent to distribute narcotics in violation of 21 U.S.C. § 841(a)(1); and other related offenses.

## II.    FINDINGS OF FACT

On August 10, 2005, at approximately 6 a.m., Special Agent Adam Cameron of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") executed a search warrant at 7128 Upland Street, Philadelphia, Pennsylvania.  (Suppression Hr'g Tr. 145–146, August 13, 2007.)  Agent Cameron was accompanied by both federal agents and Philadelphia police officers.  (*Id*. at 146.)  Agent Cameron believed that the property was the residence of Defendant Hakiem Johnson.  (*Id*.)

When the law enforcement officers entered 7128 Upland Avenue, the interior was dusty and dirty, and they realized that no one was living at that address.  (*Id*. at 147.)  As the agents exited 7128 they observed Defendant Johnson come out of 7130, the adjoining house.  (*Id*.)  Uniformed Philadelphia police officers assisting in the search approached Defendant.  (*Id*.)  The officers knew that they were investigating a potentially violent drug organization whose members possessed firearms.  (*Id*. at 147–148.)  In addition, the officers had information that Defendant was a convicted felon who might also be carrying firearms.  (*Id*. at 148.)

Police Officer Joseph McCauley of the Philadelphia Police Department's Narcotics Strike Force was on duty on August 10, 2005 and assisting in the search of 7128 Upland Street.  (*Id*. at 167–68.)  Officer McCauley's role was to provide uniform presence during the search.  (*Id*. at 168.)  He did not enter either 7128 or 7130 Upland Street.  (*Id*. at 178.)  Officer McCauley saw  Defendant exiting from 7130 Upland Street.  (*Id.* at 168–69.)  Defendant was dressed in shorts and a tee-shirt.  (*Id*. at 170.)  Defendant asked the officers what was going on.  (*Id*. at

169.)  Officer McCauley recognized Defendant from a picture provided by the federal agents.
(*Id*. at 169, 174.)  Knowing the nature of the investigation and that firearms might be present,
Officer McCauley detained Defendant and placed him in handcuffs.  (*Id*.)  Defendant was not
arrested.  (*Id.* at 169–70.)  Officer McCauley told one of the federal agents that he was detaining
Defendant.  (*Id*. at 170.)  The officer then conducted a pat down of Defendant and placed him in
the back of a police vehicle.  (*Id*.)  Defendant was not asked for his consent to search 7130
Upland Street.  (*Id*. at 176.)  Officer McCauley remained with Defendant for the duration of the
search of 7130 Upland.  (*Id*. at 172.)  From his vantage point in the police car, the officer could
see the agents speaking to Roshon Jones, the owner of the property, and subsequently conducting
the search.  (*Id*. at 148, 171.)  Defendant was also in a position to make the same observations of
7130 Upland Street.  (*Id*. at 170–71.)  While they were sitting in the police car Defendant told
Officer McCauley that he lived at 2063 South 57th Street.  (*Id.* at 179.)  Defendant did not voice
any objection to the search.  (*Id*. at 172.)  Officer McCauley ultimately released Defendant when
the search had been completed and after one of the federal agents told him that Defendant could
be released.  (*Id*.)  Defendant was surprised that he was being released.  (*Id*. at 172–73.)

   While Defendant was being detained in the police car, Agent Cameron met Roshon Jones
on the porch of 7130 Upland Street.  (*Id*. at 148, 175.)  Agent Cameron asked Jones if they could
talk.  (*Id*. at 148.)  She agreed and they walked to the kitchen.  (*Id*.)  While sitting at the kitchen
table, Agent Cameron explained the purpose of the investigation to Jones and asked if they could
check the house for firearms.  (*Id*. at 148, 149.)  The agent told Jones that he was concerned for
the children.  (*Id*.)  Jones told Agent Cameron that the house was in her name, and that she paid
all of the bills.  (*Id.*)  Agent Cameron then read the consent to search form to Jones and Jones

signed the consent form, voluntarily consenting to a search of her residence. (*Id*. at 149-51; Gov't Ex. 1 at 1.) Jones also consented to the search of her vehicle. (*Id.* at 150, 152; Gov't Ex. 1 at 2.) Agent Cameron informed the other officers that he had obtained consent for the search and the search was conducted. (Hr'g Tr. 165.) During the course of the search, the agents found two firearms in an upstairs bedroom. (*Id*. at 150)

After the search was completed, Agent Cameron spoke with Jones again. (*Id.*) Cameron told Jones that they had found two firearms during the search and asked whether she wanted to give a statement. (*Id.*) Jones agreed to give a statement. (*Id.*) Agent Cameron then read Jones her *Miranda* rights. (*Id.*) Jones stated that she understood her *Miranda* rights and was willing to provide a statement. (*Id*. at 150, 152; Gov't Ex. 1 at 3.) Jones then provided Agent Cameron with a signed, one-page written statement in her handwriting denying ownership of the guns and asserting that Defendant brought the guns into the house a month before. (Hr'g Tr. 150, 152-54; Gov't Ex. 1 at 4.) Jones's handwritten statement also indicated that Defendant had been living with Jones for a period of time.

## III.    CONCLUSIONS OF LAW

In his motions to suppress, Defendant challenges the search of the property at 7130 Upland Street on August 10, 2005 (Doc. No. 300) and the search of his blue Ford Thunderbird (Doc. No. 301).

### A.    Evidence Seized from 7130 Upland Street on August 10, 2005

Defendant argues that evidence seized from the property at 7130 Upland Street should be suppressed because "said search was not done pursuant to a search warrant and was the direct

result of invalid consent given by co-resident, Rashon [sic] Jones."[2] (Doc. No. 300 ¶ 12.)

Defendant argues that "[b]ecause the Defendant was present and physically detained without being given the opportunity to consent to the search of his premises, the entry and search was illegal." (Doc. No. 523 at 4.)  Defendant also asserts that he did, in fact, object to the search. (Suppression Hr'g Tr. 7, 8, Aug. 16, 2007.)  The Government responds that "in the absence of any objection by Johnson, and with the consent of the co-tenant, Roshon Jones, the agents were permitted to search 7130 Upland Street, and their recovery of the two loaded firearms was proper." (Doc. No. 474 at 20.)  The Government also argues inevitable discovery, asserting that the Government would have been able to obtain a search warrant for 7130 Upland Street "making the discovery of the firearms recovered therein inevitable."  (*Id*.)

Under the Fourth Amendment government agents generally must have a warrant in order to conduct a search of a home.  *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 454–455 (1971).  However, the Supreme Court has determined that warrantless searches are valid "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).  Where there is more than one occupant to a property, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Randolph*, 547 U.S. at 122-123.  The *Randolph* Court drew the following distinction: "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's

---

[2] Defendant's first argument challenges Jones's consent on the grounds that Jones allegedly signed the consent form after the search was performed.  (Hr'g Tr. 9/13/07 at 144.) This argument is without merit.  We find based upon Agent Cameron's credible testimony that Jones voluntarily signed the consent form prior to the search.

5

permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121. While making this distinction the *Randolph* Court discussed its decision in the case of *United States v. Matlock*, 415 U.S. 164 (1974). In *Matlock*, defendant was arrested in the front yard of the house that the police officers wished to search, but for which they had no search warrant. "Although the officers were aware at the time of the arrest that respondent lived in the house, they did not ask him which room he occupied or whether he would consent to the search." ( *Id.* at 166.) Instead the officers spoke to another resident who voluntarily consented to the search of the house. The Supreme Court held that the resident's consent was good against "the absent, non-consenting resident." The *Randolph* court acknowledged that it was drawing a fine line but went on to explain:

> So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

*Id.* at 121–22.

In this case, Defendant was not detained for the purpose of removing a potentially objecting tenant. Although Defendant walked out of 7130 Upland Street, when he was detained the officers did not know that Defendant was a tenant. He was detained because the law enforcement officers were conducting a drug investigation and Defendant was known to be a convicted felon, a member of a violent drug organization, and a person who was possibly in possession of firearms. Defendant was detained for the officers' safety. Moreover, Defendant told Officer McCauley that he did not live at 7130 Upland Street but rather lived at 2063 South

57th Street.[3]  Under the circumstances there was certainly no reason for Officer McCauley to ask Defendant if he consented to the search and there was no reason for the officers to expect that Defendant would be objecting to the search.

We reject Defendant's testimony that he refused to give his consent to the search and that he in fact objected to the search.  Defendant's testimony is simply not credible.  It was directly at odds in several respects with the credible testimony of Officer McCauley and Agent Cameron.  Moreover, it flies in the face of his telling the officers that he did not live at that address.  Finally, at the suppression hearing on August 16, 2007, the Government demonstrated that Defendant's testimony that he never at any time talked to Roshon Jones about the fact that he objected to the search was not true.  (*Id.* at 15-19.)  Defendant was not a credible witness.

We are satisfied that the search conducted at 7130 Upland Street on August 10, 2005 was a valid consent search.  The consent was voluntarily given by Roshon Jones, the owner of the premises.  If Defendant was a tenant in the property, he did not object.  Nor was he removed from the property to avoid a possible objection.  Defendant's Motion to Suppress evidence seized from 7130 Upland Street will be denied.

**B.**     **Evidence Seized from blue Ford Thunderbird on August 10, 2005**

Defendant also moves for suppression of evidence seized from the Ford Thunderbird parked in front of the Upland Street residence on the grounds that "the search of the blue Ford Thunderbird violated the Defendant's right against unreasonable search and seizure guaranteed under the Forth [sic] and Fourteenth Amendments of the United States Constitution." (Doc. No.

---

[3] Interestingly, when Defendant was arrested in 2006 he told pretrial services that he lived at 2520 South 58th Street and had lived at that address for the last four years.

301 ¶ 9.)  In support of this motion, Defendant argues that the affidavit for the search warrant contains factually incorrect statements, including Defendant's address on Upland Street.  (*Id.* at 3.)  Defendant also argues that "no agent possessed any information that moving Defendant transported or stored cocaine, or any evidence of drug trafficking in the Thunderbird."  (*Id.* at 2.)

The Government responds that Defendant's challenge to the Government's probable cause to search the Ford Thunderbird is inexplicable.  (Doc. No. 474 at 20.)  The Government asserts that "in the affidavit, the agent explained in significant detail the manner in which the defendant used that car to make drug deliveries for Coles." (*Id.* at 20–21.)

When reviewing whether a search warrant was based on sufficient probable cause, we adopt a deferential standard.  *United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005).  In assessing whether probable cause exists to support the issuance of a search warrant, the magistrate must do a "totality-of-the-circumstances analysis" and must make a "practical, common-sense decision."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  That decision should be based on "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information."  *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

The District Court, in reviewing the magistrate's decision, must "simply . . . ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."  *Id.* at 238-39 (quoting *Jones*, 362 U.S. at 271); *see also United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).  A "substantial basis" is said to exist where, "given all the circumstances set forth in the affidavit before [the issuing judge] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.

Based upon the affidavit, we are satisfied that Magistrate Judge Rueter had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in the Ford Thunderbird. The affidavit explained that there was a large number of properties and cars involved in this drug conspiracy. (Search Warrant Aff. ¶ 9.) Furthermore, the affiant, Special Agent Anthony M. Tropea, stated, based upon his experience and training, that:

> I . . . know that drug traffickers often keep drug paraphernalia, such as scales, razors, straws and plastic bags, in cars they use. I also know that drug traffickers keep illegal drugs in their cars, but typically not for long periods of time. Nevertheless, I know that trace amounts of illegal drugs remain for long periods of time in cars drug traffickers use. . . . I also know that firearms, ammunition and cash are often transported and stored in cars used by drug traffickers.

(*Id*. ¶ 159.)

The affidavit identified Defendant as Alton Coles's "third principal courier" (*id*. ¶ 15(k)), someone who sold and delivered cocaine (*id*. ¶ 17). Defendant was identified as someone who had the responsibility of delivering cocaine in "weight" or bulk form to Coles's street managers. (*Id*. ¶ 28.) The affidavit also described how a confidential informant purchased crack cocaine from Defendant at least eight or nine times. (*Id*. ¶ 28.) Agent Tropea explained that agents corroborated the information of this confidential informant through independent investigation. (*Id*. ¶¶ 30–40.)

Likewise, the Government established a nexus between contraband and the Ford Thunderbird. For example, through its wiretap, the Government intercepted telephone calls between Coles and Desmond Faison, a co-defendant, about Faison going to Defendant's house. (*Id*. ¶ 32.) Coles then called Defendant and told him that Faison would be arriving soon. (*Id*.) Based on these intercepted calls, the Government established surveillance outside of Defendant's

9

house on Upland Street.  (*Id*. ¶ 33.)  Agents observed Defendant drive up and park his Ford

Thunderbird.  (*Id*.)  Agents watched him enter 7128 Upland Street and then exit carrying a white

bag.  (*Id*.)  Defendant got into the Ford Thunderbird and drove away.  (*Id*.)  Defendant returned

about twenty minutes later in the car, entered 7128 Upland Street again, and then came back out

again carrying a white plastic bag.  (*Id*.)  Faison pulled up in front of the house.  (*Id*.)  Defendant

leaned into the passenger window of Faison's car.  (*Id*.)  When Defendant backed away from the

window he was not holding the white bag.  (*Id*.)  Faison drove away.  (*Id*.)  Defendant then got

into his car, the Ford Thunderbird, and drove away as well.  (*Id*.)  Agent Tropea explained that

this behavior is consistent with delivery of cocaine by Defendant to Faison for Coles.  (*Id*.)  It is

apparent that in advance of delivering the cocaine to Faison, Defendant carried the cocaine out of

the house and into the Ford Thunderbird.

On a separate date, agents intercepted a call in which Coles instructed another co-

defendant, Dante Tucker, to give a "Superman 2" to Defendant.  (*Id*. ¶ 122.)  Agent Tropea

explains that "superman," as well as terms such as "big boy" and "little boy," refer to weights of

cocaine.  (*Id*. ¶ 122 n.70.)  The agents established surveillance outside of 339 E. Essex Avenue

after intercepting a telephone call on the same day between Coles and Faison regarding that

address.  (*Id*. ¶ 122.)  Agents observed Tucker arriving at the property and going inside of the

property.  (*Id*.)  Agents then observed Defendant pulling up in front of 339 E. Essex Avenue in

the Ford Thunderbird.  (*Id*.)  He walked inside of the property.  (*Id*.)  Defendant then walked out

of property carrying a "brown bag." (*Id*.)  Still holding this bag, Defendant entered the Ford

Thunderbird, drove away and returned home.  (*Id*.)  Tucker then left the property as well.  (*Id*.)

Agent Tropea stated that this "sequence of events is consistent with the use of 339 East Essex

Avenue as a stash location." (*Id.*)  It is reasonable to conclude under the circumstances that Tucker delivered cocaine to Defendant at 339 E. Essex Avenue and that Defendant subsequently brought carried cocaine into the Ford Thunderbird and drove away with it.

The totality of the evidence clearly created a substantial basis for a finding of probable cause and was more than sufficient for the issuance of a warrant to search the Ford Thunderbird.

Accordingly, Defendant's motion to suppress evidence seized from the Ford Thunderbird will be denied.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| HAKIEM JOHNSON | : | |

## **ORDER**

AND NOW, this __4th__ day of January, 2008, upon consideration Defendant Hakiem

Johnson's Motion to Suppress the Physical Evidence Seized at 7130 Upland Street on August

10, 2005 (Doc. No. 300), and the Motion of Defendant, Hakiem Johnson, to Suppress the Search

of a Blue Ford Thunderbird (Doc. No. 301), and all documents submitted in support thereof and

in opposition thereto, and after hearing in open court, it is ORDERED that the Motions are

DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge